# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF J.M., by and through his parent, PROMISE MATA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case No. 3:17-cv-00405** |
| | ) | **Judge Aleta A. Trauger** |
| TENNESSEE DEPARTMENT OF EDUCATION, TENNESSEE STATE BOARD OF EDUCATION, and DICKSON COUNTY SCHOOL DISTRICT, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

J.M., by and through his parent, Promise Mata, has filed an Objection to the Revised Report of Sue Gamm (Docket No. 59), to which the Tennessee Department of Education ("TDOE") and Tennessee State Board of Education ("Board") (collectively, "State Defendants") have filed a Response (Docket No. 61). For the reasons stated herein, J.M.'s objection will be overruled.

## I. BACKGROUND & PROCEDURAL HISTORY

J.M. is a student at New Directions Academy in the Dickson County School District ("DCSD"). As of April 19, 2017, he was thirteen years old. (Docket No. 12 ¶ 8.) The parties agree that J.M. has a disability, which Ms. Mata identifies as related to, arising out of, or encompassing autism, intellectual disability, obsessive compulsive disorder, anxiety, and attention deficit hyperactivity disorder. (*Id.* ¶ 9; Docket No. 26 at 1.) Due, apparently, to J.M.'s behaviors at school, he has routinely been placed by DCSD personnel in what DCSD referred to as "Intensive Problem Solving (IPS) Rooms" and Ms. Mata refers to as "Isolation Rooms" or

"Scream Rooms." J.M., through his mother, Ms. Mata, alleges that DCSD's use of IPS Rooms violated the state's Special Education Behavior Supports Act ("SEBSA"), Tenn. Code Ann. § 49-10-1301 *et seq.*, which sets forth requirements for when and how restraint and isolation may be used with students receiving special education in Tennessee schools. (*Id.* ¶¶ 10, 23, 44.)

Although case-by-case decisions about isolation and restraint are typically made by school personnel, SEBSA commits certain overarching guidance and oversight responsibilities to the State Defendants. *See* Tenn. Code Ann. § 49-10-1306. Ms. Mata argues that J.M.'s improper treatment by DCSD was, at least in part, attributable to the State Defendants' "failing to provide training or guidance on isolations, collecting years' worth of unreliable data, failing to examine individual school districts['] or schools' reports, failing to make adequate recommendations, [and] failing to fulfill the sole recommendation that was made by the" Advisory Council for the Education of Students with Disabilities. *See* Tenn. Code Ann. § 49-10-1306(e). (Docket No. 12 ¶ 44.)

The federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, expressly incorporates certain state-promulgated standards into its requirements for states that receive federal special education funds. 20 U.S.C. § 1401(9)(b); *see Doe ex rel. Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 457 (6th Cir. 1993) ("[E]ven if a school district complies with federal law, it may still violate the [IDEA] if it fails to satisfy more extensive state protections that may also be in place.") (quoting & citing *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 620 (6th Cir. 1990)). Courts have held that the IDEA incorporates SEBSA into the IDEA requirements for Tennessee. *See, e.g., I.L. ex rel. Taylor v. Knox Cty. Bd. of Educ.*, 257 F. Supp. 3d 946, 964 (E.D. Tenn. 2017).

Ms. Mata filed a Complaint on J.M.'s behalf against DCSD on March 2, 2017, and filed a First Amended Complaint, adding the State Defendants, on April 19, 2017. (Docket Nos. 1 & 12.) Count I of the First Amended Complaint pleads claims against all defendants under the IDEA. Count II pleads claims against all defendants under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (*Id.* ¶¶ 45–48.) Counts III and IV plead common law claims against DCSD only. (*Id.* ¶¶ 49–59.) On May 30, 2017, Ms. Mata, DCSD, and DCSD's insurer moved the court to approve a settlement of all claims against DCSD. (Docket No. 16.) On June 12, 2017, the court approved the settlement following a hearing in chambers, ending DCSD's participation as a party. (Docket No. 24.)

On July 31, 2017, the State Defendants filed a motion to dismiss the remaining claims (Docket No. 25), which the court denied on December 14, 2017 (Docket No. 32). In so doing, the court wrote that, while state agencies may not "be the correct parties against whom to seek relief in every case," a student whose IDEA rights have been violated can state a claim against a state agency, if "systemic, state-level failures" were a cause of the underlying statutory violation. (Docket No. 31 at 9–10 (citing *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) ("[O]ur court has suggested that 'systemic violation' of the State's responsibilities under the IDEA might give rise to state liability."); *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 141 n.3 (E.D.N.Y. 2010) (noting that the state educational agency "is a proper defendant in this action, which challenges a [state] policy that allegedly interferes with the IEP development process for disabled students in a systemic manner"); *Fetto v. Sergi*, 181 F. Supp. 2d 53, 72 (D. Conn. 2001) ("The state education agency is a proper party to actions involving claims of systemic violations of the IDEA . . . ."); *Corey H. v. Bd. of Educ. of City of Chicago*,

995 F. Supp. 900, 913 (N.D. Ill. 1998) ("[C]ourts have found that the state educational agency is responsible for a local school district's systematic failure to comply with an IDEA mandate.")).) Because J.M. has alleged that New Directions Academy's improper use of isolation was, at least in part, the result of such systemic, state-level failures, the court did not dismiss his claims against the State Defendants. (*Id.* at 10.)

On January 22, 2018, the court issued an Amended Case Management Order that required, among other things, that the parties disclose all expert witnesses and expert reports on or before April 1, 2018. (Docket No. 38 at 5.) On May 15, 2018, J.M. filed a motion to exclude the testimony of Sue Gamm, an expert proffered by the State Defendants. (Docket No. 42.) J.M. argued that Gamm's report and anticipated testimony improperly usurped the role of the court by commenting on issues of law. (*Id.* at 2–3.)

On July 3, the court issued a Memorandum and Order denying J.M.'s motion. (Docket No. 56.) The court concluded that some discussion of the underlying legal structures was likely inevitable for any expert who was expected to testify as to accepted special education practices, but that parts of Gamm's report did veer too far into the realm of unnecessarily setting forth legal conclusions. (*Id.* at 9.) Other aspects of Gamm's report, however, plainly touched on contested, material issues of fact on which she had considerable relevant expertise. (*Id.*) Accordingly, the court ordered the parties to confer in an attempt to agree upon appropriate redactions to the Gamm Report, after which the State Defendants would file a proposed Redacted Report and J.M. would file any remaining objections. (*Id.* at 10.) On July 23, 2018, the State Defendants filed the Proposed Redacted Report (Docket No. 58), and J.M. filed his Objections on July 30, 2018 (Docket No. 59), along with a copy of the report, containing a number of additional proposed redactions (Docket No. 59-1). Although J.M. has not provided an itemized explanation of the

proposed additional redactions, he objects generally that the proposed redacted sections consist of impermissible legal opinions. (Docket No. 59 at 2.) He adds, however, that "argument about redaction of which sentences in the out-of-court unsworn report, whether valid expert opinion or impermissible legal conclusions, would seem to be unnecessary," since the report itself is inadmissible hearsay. (*Id.*) In their Response, the State Defendants agree that they have not sought to admit the Report into evidence, but they suggest that "judicial economy favors resolving which statements in the report will ultimately be admissible at this time, as opposed to shortly before or during trial." (Docket No. 61 at 3.)

The case is set for bench trial on February 12, 2019, with expert witness statements required to be filed by February 5, 2019. (Docket No. 57 at 2.)

## II. ANALYSIS

"[O]nly the [c]ourt may determine the applicable law in [a] case," and, if it is a jury case, "the [c]ourt alone instructs the jury as to that law." *Heil Co. v. Evanston Ins. Co.*, No. 1:08-CV-244, 2013 WL 11322818, at *1 (E.D. Tenn. Feb. 15, 2013). Allowing an expert to testify regarding issues of law in such a proceeding would risk both confusing the jury and impinging on the duties of the court. This case, however, has been set for bench trial, which makes the stakes regarding the parties' disagreement on this issue considerably lower. There will be no jury that could be led astray by an impermissible instruction on the law from an expert witness. The only factfinder that could be improperly influenced is the court, which remains fully aware that "it is [the] job [of] judges 'to say what the law is.'" *In re City of Detroit, Mich.*, 838 F.3d 792, 805 (6th Cir. 2016) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). Moreover, while "a witness may not testify to a legal conclusion," *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353

(6th Cir. 1994)), this court does routinely allow parties to file trial briefs, in which the filing party is free to make any supportive legal assertions that are material to the issues before the court. The parties, moreover, will have at least two opportunities to explain the legal framework underlying J.M.'s claims to the court, in their list of contested legal issues and in their respective proposed findings of fact and conclusions of law, all of which are due February 5, 2019. Any legal conclusions that might be improperly included in Gamm's Local Rule 39.01(c)(5)(E) testimony, therefore, could just as easily be cut-and-pasted into any of the proper avenues for making legal argument.[1] The only concern underlying J.M.'s motion, therefore, seems to be that the court will somehow be confused or misled by the fact that legal assertions have come from an expert rather than counsel. The court assures the parties that it will not.

Nevertheless, J.M. is correct that, generally speaking, "[e]xpert testimony on the law is excluded because the trial judge does not need the judgment of witnesses" on questions of law. *United States v. Gordon*, 493 F. App'x 617, 626–27 (6th Cir. 2012) (quoting *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984)). As the court has explained, the special education field poses particular challenges in applying that rule. The structures through which special education services are administered are closely entwined with the terms of the IDEA, and, when public schools are involved, even more legal layers may come into play. For those reasons, it would be virtually impossible to explain the facts underlying an IDEA case while making no references, at least obliquely, to the law. Many of those references, moreover, may be to wholly undisputed legal principles and may help the factfinder understand the witness's testimony in the context of how special education is administered. As long as a factfinder knows that a witness's references

---

[1] Indeed, it seems to the court that the pleadings would be a markedly superior avenue for making any legal assertions, as they would spare counsel from the risk of having to argue that a legal issue was raised or preserved purely through the testimony of a witness. In this regard, counsel for the State Defendants rely on Gamm to explain the law at their own peril.

to the law are only contextual background and have no legal force, there is no need to sacrifice the intelligibility of a witness's testimony simply to be overprotective of the court's monopoly on stating the law, especially in a bench trial.

Because the court does not yet know what Gamm's Rule 39.01(c)(5)(E) testimony will contain, there are no objections to proposed evidence that the court can sustain. In the interest of judicial economy, however, the court notes that the following sections highlighted by J.M. represent unnecessary legal conclusions that the State Defendants did not initially redact but that the court would be unlikely to permit to be raised via testimony:

| Page[2] | Passage[3] |
|---|---|
| 7 | As applied to state defendants, there must be a connection between state policies, practices, or procedures that directly impacts students with IEPs, i.e., J.M. |
| 7 | If there are reasons to believe that the student has been adversely affected by the use of restraint/isolation and that the student's needs are not being met, schools are then obligated under Section 504 to take follow up action to address these circumstances. |
| 7 | Recipients of Federal financial assistance are prohibited from utilizing criteria or methods of administration that have the effect of subjecting qualified students with disabilities to discrimination on the basis of disability, or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to persons with disabilities. |
| 7–8 | Under IDEA, monitoring is different from enforcement. . . . This provision states that TDOE shall monitor LEAs, state agencies and private schools periodically "to determine the extent to which special education and related services are being implemented in the least restrictive environment and to assure compliance with **applicable** laws and regulations." |

---

[2] The court uses the page numbers of the Gamm Report itself, as reflected in J.M.'s proposed redactions. (Docket No. 59-1.)

[3] Some passages have been truncated for economy of space. Where a shortened passage is included, the court is referring to the full passage from the first word quoted to the last.

| 8–11 | The Act defines restraint and isolation, described prohibited and permitted school personnel activities, established parameters for such areas as parent notification, documentation of the isolation/restraint, and IEP requirements. . . . Secondly, TBOE must use the SAC's recommendations, as well as data, documentation and reports, to establish policy or strategies or both to reduce or eliminate the use of isolation and restraint in schools. |
|---|---|
| 16–17 | **Certified Behavior Intervention Training.** In the event that restraint or isolation is imposed on a student, it shall be imposed by: (1) School personnel who have been certified for completing a behavior intervention training program; or (2) Other school personnel when trained personnel are not immediately available. . . . LEAs shall develop policies and procedures governing: (a) personnel authorized to use isolation and restraint; (b) training requirements; and (c) incident reporting procedures. |
| 29 | IDEA enforcement requirements specified at 34 C.F.R. § 300.600 articulate SEA enforcement obligations. These relate to actions states are required to take to ensure that findings of noncompliance are corrected in a timely manner, and no later than one year from their identification. IDEA lists appropriate enforcement mechanisms, which include technical assistance, conditions on funding of an LEA, corrective action or improvement plan, withholding funds, etc. Monitoring is different from enforcement, as IDEA details under 34 C.F.R. §§ 300.120 (monitoring least restrictive environment); 300.157 (establish performance goals and indicators); 300.600 (state monitoring and enforcement); 300.601 (state performance plans and data collection); and 300.602 (state use of targets and reporting). |
| 29–30 | Two provisions relate to TSBOE. . . .This provision states that TDOE shall monitor LEAs, state agencies and private schools periodically "to determine the extent to which special education and related services are being implemented in the least restrictive environment and to assure compliance with **applicable** laws and regulations." |
| 42 | The complaint does not include two additional provisions that clarify the meaning of this requirement. . . . The requirement would also allow SEAs, for example, to establish programs for special educators to earn alternative graduate level certification for shortage personnel areas. |
| 42–43 | Such issues would fall under section 300.114. This regulatory section does not apply to a student in a specialized school who is separated from other students without IEPs. |

| | |
|---|---|
| 43 | **Behavior Intervention Training.** LEAs should incorporate specified components into its behavior intervention training program, including areas such as evidence-based techniques shown to be effective in the prevention of isolation and physical restraint; information describing state statutes, policies, rules, and procedures on restraint and isolation, etc. . . . LEAs shall develop policies and procedures governing . . . training requirements. |
| 47 | SEBSA has two requirements for TSBOE. Pursuant to the first requirement, TSBOE established rules and regulations governing the use of isolation/restraint. The second provision requires TSBOE to use SAC recommendations, data, documentation and reports to establish policy or strategies or both to reduce or eliminate the use of isolation and restraint in schools.138 As discussed above, TDOE did not require TSBOE authority to issue a FAQ document regarding isolation/restraint, which was the sole SAC recommendation in its April 14, 2016 report. |
| 47 | [U]nder TN code the education commissioner is responsible for the implementation of law or policies established by the general assembly or TSBOE.139 Similarly, under IDEA, the SEA is responsible for ensuring that educational programs for students with disabilities meet the SEA's educational standards, including the requirements of IDEA Part B. |
| 47 | Related to this reality is IDEA's statement that the primary focus of SEA monitoring activities must be on— <br>• Improving educational results and functional outcomes for all children with disabilities; and <br>• Ensuring that public agencies meet the program requirements under Part B of the Act, with a particular emphasis on those requirements that are most closely related to improving educational results for children with disabilities |

Of course, there is nothing to stop the State Defendants from including any or all of those statements in a trial brief, setting them forth in its proposed conclusions of law or, insofar as the underlying legal premises are disputed, including those disputes in its pretrial designation of disputed issues of law.

The other sections highlighted by J.M. either are not legal assertions or provide appropriate background and would be more likely to be allowed by the court to appear in testimony. Even then, though, the court would consider them only as Gamm's statement of her

understanding of the law, provided as context for explaining her opinion, and would give the statements no binding or even legally persuasive effect.

The parties are urged to confer with each other in an attempt to restrict Gamm's testimony to a scope that J.M. and the State Defendants can agree is admissible. The State Defendants are urged, in particular, to remember that there is no reason to rely on Gamm to introduce legal premises, when the briefing offers more than sufficient opportunities for doing so. J.M., in turn, is urged to remember that, in a bench trial, a dispute of this sort typically comes down to little more than a question of which piece of paper a sentence appears on, because the court is capable of sorting law from fact. It is the hope of the court that the parties can resolve this set of issues and move on to questions with greater bearing on the resolution of the case.

## IV. CONCLUSION

For the foregoing reasons, J.M.'s Objection to the Revised Report of Sue Gamm (Docket No. 59) is hereby **OVERRULED**.

It is so **ORDERED**.

ENTER this 17th day of October 2018.

_____
ALETA A. TRAUGER
United States District Judge